

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

The following constitutes the ruling of the court and has the force and effect therein described.

Signed January 22, 2021

_____
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| IN RE: | CASE NO. 19-33186-sgj |
|---|---|
| MICHAEL JAVIER DEBONO<br>    Debtor. | |
| AJA CAPITAL MANAGEMENT LLC<br>    Plaintiff | |
| v. | Adv. No. 20-03001-sgj |
| MICHAEL JAVIER DEBONO,<br>    Defendant | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This has of course been an adversary proceeding in which the plaintiff objected to the discharge of its debt that is owing to it by the debtor under Bankruptcy Code Sections 15 523(a)(2)(A) and 523(a)(6).

The following are the Court's Findings of Fact and Conclusions of Law, issued pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable in adversary proceedings, by Federal Rule of Bankruptcy Procedure 7052.[1]

## **FINDINGS OF FACT**

Plaintiff is a limited liability company organized under the laws of the State of New York.

Plaintiff became a creditor of an LLC named Statera Real Estate Development, LLC, hereinafter referred to as "Statera" as follows.

The debtor and the principal of plaintiff, Mr. David Henchel, had known each other socially and had discussed a potential investing in real estate together.  In the winter of 2016, the debtor and Mr. Henchel had a discussion about an investment in properties that defendant intended to develop in Dallas, Texas. And then ultimately, on March 18th, 2016, plaintiff made two loans to Statera in the amount of $125,000 each.

Mr. Debono personally guaranteed the debt of Statera owing to plaintiff. The two loans were documented by two separate promissory notes which were submitted into evidence.  One note, the first promissory note ("Note 1") stated that it would bear interest at the rate of "[T]wo percent per month until paid and that, the entire principal together with interest accrued thereon shall be payable upon the earlier to occur of (i), the date of the closing of the sale of the Investment property, (as hereinafter defined); or, (ii), the fifth (5th) day after the date on which Holder makes a demand for payment pursuant to this Promissory Note."

---

[1] Any Finding of Fact that more properly should be construed as a Conclusion of Law shall be considered as such, and *vice versa*.

The investment property was defined later to mean the premises and improvements thereon located at 695 Kessler Reserve Court, Dallas, Texas 75208. The first promissory note further stated that, "[T]he Maker's obligations under this note shall be secured by a mortgage lien on the investment property.  The security interest on the investment property granted to the Holder hereunder, and all related liens shall be subordinated to any present or future security interest in or liens on the Investment Property granted by the maker to any bank or institutional lender who provides purchase or construction financing with respect to the Investment Property. The Maker's obligation under this Note shall be guaranteed by Michael Debono."

The first promissory note further provided that "[t]he proceeds of this note shall be used by the maker solely in connection with and for the acquisition of the investment property.  It went on to say that "[A]ny and all construction of the investment property shall be performed by and completed by Versailles Dallas Inc., using qualified subcontractors, with Dylan ElChami and Sam ElChami acting as the general contractors … ."

Note 2, the second promissory note, also in the amount of $125,000.00 had identical terms to Note 1 except that the term "Investment Property" in the second note was defined to mean the premises and improvements thereon located at 624 Kessler Reserve Court, Dallas, TX 75208.

The evidence showed that shortly after receiving the loans and the loan proceeds, the loan proceeds were used to purchase two vacant lots in Dallas, 695 Kessler Reserve Court and 624 Kessler Reserve Court (the "Kessler Lots").

Liens were never placed or properly perfected on the Kessler Lots in favor of the plaintiff.  Significantly, the loan documents that the debtor had originally presented to the plaintiff were rejected by the plaintiff and the ultimate loan documents were drawn up by the plaintiff's attorney, Gavin Grusd.  Significant on this point was Defendant's Exhibit D, which was an email in which Mr. Grusd stated to the plaintiff:

> As we discussed, the mortgage can be given and you can file it or not file it. … We need to prepare the mortgage, which would be in a form that would be fileable in Texas.

The evidence shows that this was never done.  The Court does not find or conclude that the failure to properly obtain perfected deeds of trust or a perfected security interest in the Kessler Lots was a result of fraud on the part of the defendant.

As far as the sophistication of the parties, the Court does not find there to be a lopsided advantage on the part of the defendant.

The debtor subsequently transferred his 50% interest in Statera to his business partner Mr. ElChami.  The debtor asserted that such transfer was done after consultation with the plaintiff's principal, Mr. Henchel.  The Court finds the debtor's testimony to be credible.  In consideration for that transfer, the plaintiff received two additional agreements to be paid out of the proceeds of two other properties being developed by the debtor at that time – the Allencrest Property and the Lively Property.

Statera and the debtor remained liable to the plaintiff.  The debtor did not release his guaranties.  The Court finds these facts to be evidence of some good faith intent on the part of the debtor to try to get the plaintiff paid, not an intent to defraud.

The defendant was in legitimate financial distress at that time due to cost overruns on his real estate holdings. The Court finds that his actions were a "Hail Mary pass" to get people, including the plaintiff, paid.

While defendant's business partner, Mr. ElChami, subsequently transferred Statera's ownership of the two Kessler lots to a separate limited liability company owned or controlled solely by Mr. ElChami, resulting in Statera having no assets, the Court does not find this to be evidence of the debtor's fraudulent intent.

When the debtor received approximately $150,000 of value in connection with the transfer of the Lively property, he did not pocket it, but transferred it to an assignee for the benefit of creditors and ultimately it went to the bankruptcy trustee of this estate. The Court finds that these actions also show a lack of fraudulent intent.

The Court finds that the defendant did not intentionally harm the plaintiff. He did not have an intent to commit an injury to the plaintiff. He was not even reckless to a degree that the legal standard of Bankruptcy Code 523(a)(6) entails.

## **CONCLUSIONS OF LAW**

Bankruptcy Code 523(a)(2)(A) provides in relevant part that a discharge in chapter 7 does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by false pretenses, a false representation, or actual fraud other than a statement respecting the debtor's or an insider's financial condition.

Bankruptcy Code 523(a)(6) provides, in relevant part, that a discharge in Chapter 7 does not discharge an individual debtor from any debt for willful or malicious injury by the debtor to another entity or to property 7 of another.

In an action under Bankruptcy Code 523 it is the creditor that has the burden of proof under a preponderance of the evidence standard.[2]

Actions for exceptions to discharge must be strictly construed against and liberally construed in favor of a debtor.[3]

For representations to be false, representations or false pretenses under 523(a)(2), the false representations or false pretenses must encompass statements that falsely purport to depict current or past facts. A debtor's promise related to a future action that does not purport to depict current or past facts, therefore cannot be defined as a false representation or a false pretense. Thus, to prove a debt is nondischargeable, as having been obtained by false pretenses or representations, a creditor must establish:

(1) the existence of a knowing and false and fraudulent falsehood;
(2) describing past or current facts; and
(3) that was relied upon by the creditor.[4]

Actual fraud consists of any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another, something said, done, or omitted with the design of perpetrating what is known to be a cheat or deception.[5]

To prevail under Bankruptcy Code 523(a)(6), a plaintiff must show that the injury sustained was intended by the defendant.[6]

### END OF FINDINGS OF FACT AND CONCLUSIONS OF LAW ###

---

[2] *Grogan v Garner*, 498 U.S. 279, (Sup. Ct. 1991).
[3] *In re Harwood*, 637 F.3d 615, (5th Cir. 2011)
[4] *Recoveredge v. Pentecost*, 44 F.3d 1284 at 1292 through 1293, (5th Cir. 1995)
[5] *Recoveredge v. Pentecost*, 44 F.3d 1284 (5th Cir 1995)
[6] *Kawaauhau v. Geger*, 523 US 57 (Sup. Ct. 1998); *Matter of Delaney*, 97 F3d 800 (5th Cir. 1996)